```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
_____
                                :
JOSE A. RAMIREZ,                :
                                :
            Plaintiff,          :   Civil Action No. 12-6781(JBS)
                                :
        v.                      :
                                :
DENNIS NUGENT, et al.,          :         OPINION
                                :
            Defendants.         :
_____:
```

**APPEARANCES:**

William M. Tambussi, Esq.
Benjamin S. Teris, Esq.
Brown & Connery LLP
360 Haddon Avenue
Westmont NJ 08096
   Attorney for Plaintiff

Ellen Lubensky Casagrand, Esq.
Buckley Theroux Kline & Petraske LLC
932 State Road
Princeton NJ 08540
   Attorney for Defendant Dennis Nugent

**SIMANDLE, Chief Judge:**

Plaintiff Jose A. Ramirez alleges that while a prisoner at South Woods State Prison he underwent urological surgery by Defendant Dennis Nugent, M.D., to improve an abnormality and that the surgery rendered him sterile, a risk of which he was not informed. In his Amended Complaint, Ramirez alleges claims for medical malpractice under New Jersey law, for violation of the Eighth Amendment right to adequate medical care while

incarcerated pursuant to 42 U.S.C. § 1983 and the New Jersey Constitution, and for violation of his Fourteenth Amendment right to be informed of the potential consequences of such operation pursuant to 42 U.S.C. § 1983.

This matter comes before the Court upon Defendant Nugent's Motion to Dismiss this action for failure to state a claim of medical malpractice because Plaintiff did not serve an Affidavit of Merit as required under N.J.S.A. 2A:53A-29, and because Plaintiff has not stated a constitutional claim entitling him to a remedy under 42 U.S.C. § 1983. (Docket Item 33). Plaintiff filed opposition to the motion (Docket Item 35) to which Defendant replied (Docket Item 36).

## I. Background

On or around November 1, 2012, Plaintiff, incarcerated at the South Woods State Prison, filed a *pro se* civil complaint asserting jurisdiction under 42 U.S.C. § 1983. (Docket Item 1). In the complaint, Plaintiff states that after a urinary abnormality for a substantial period of time, Defendant Dr. Nugent recommended and performed surgery. The first surgery took place on February 8, 2011, and a "minimal prostatic obstruction" was found. On July 22, 2011, after four months of no improvement, Dr. Nugent considered the obstruction diagnosis and performed a second surgery. (Complt., ¶ 6).

After the surgeries, Plaintiff realized he was unable to ejaculate. He saw Dr. Nugent on October 23, 2011, and first learned that "his medical injury caused by the procedure" (presumably, the inability to ejaculate), was permanent. Plaintiff obtained his medical records and learned that Dr. Nugent was planning on having an in-depth discussion with Plaintiff prior to the surgery about consequences of the surgery; however, the conversation never took place. Plaintiff "submits that Dr. Nugent did not discuss the possible consequences of the medical procedure with him at any time preceding the surgery." (*Id.*).

On February 18, 2013, Defendant Nugent filed an Answer to the Complaint (Docket Item 8), and then an amendment to the Answer on February 19, 2013 (Docket Item 9). On June 7, 2013, Plaintiff's motion to appoint *pro bono* counsel was granted (Docket Item 14), and counsel entered an appearance for Plaintiff on August 23, 2013 (Docket Item 18).

On November 21, 2013, Plaintiff's counsel filed a Motion to Amend, which was granted on December 3, 2013 (Docket Items 21, 22). On December 13, 2013, the Amended Complaint was filed (Docket Item 25). In the Amended Complaint, Plaintiff asserts that on or about October 10, 2013, prior to the filing of the Amended Complaint, Plaintiff saw a urologist, who informed him that the cause of his urinary abnormality was not his prostate,

3

but rather due to an overactive bladder. (Am. Complt., ¶ 20). Thus, Plaintiff argues that since he was misdiagnosed, resulting in an unnecessary surgery for which he was not informed of the consequences prior, deliberate indifference has been shown. (Am. Complt., ¶ 22). The unnecessary surgery rendered Plaintiff sterile and caused irreversible damage (Am. Complt., ¶¶ 25, 34).

On February 24, 2014, Defendant filed an Answer to the Amended Complaint (Docket Item 31). This Motion to Dismiss followed on April 2, 2014 (Docket Item 33), and Plaintiff thereafter filed an Affidavit of Merit on April 15, 2014.[1]

## II. **Parties' Positions**

Defendant Nugent, who is the sole named defendant in the Amended Complaint (the other being a "John Doe" defendant), asserts that Plaintiff failed to file an Affidavit of Merit as required by New Jersey's Affidavit of Merit statute, N.J.S.A. 2A:53A-29.  Accordingly, Defendant argues that Plaintiff's claims asserting medical malpractice must be dismissed with prejudice for failure to state a claim.  Additionally, Defendant asserts that Plaintiff's claims do not rise to the level of a constitutional violation to warrant a remedy under 42 U.S.C. § 1983.

---

[1]   Defendant concedes that an Affidavit of Merit was provided to them on April 15, 2014 (Reply to Opposition, Docket Item 36).

Plaintiff counters that the motion to dismiss should be denied because he, in fact, did file an Affidavit of Merit, and that his Amended Complaint asserts a constitutional violation.

While Defendant admits that Plaintiff did file an Affidavit of Merit, the timeliness of that Affidavit is in question. Plaintiff argues that the Affidavit was timely, as it was filed within the 120-day period after the answer to the *Amended* Complaint; while Defendant argues that the Affidavit should have been filed 120 days after the answer to the o*riginal* Complaint, as the substance of the Amended Complaint contained the same allegations as the original Complaint. (Opposition, Docket Item 35; Reply, Docket Item 36).

As to the constitutional claims, Plaintiff argues that sterilization without informed consent amounts to deliberate indifference and reckless disregard under the Eighth and Fourteenth Amendments and the New Jersey Constitution in Art. 1, Sec. 12. Defendant argues that the Amended Complaint does not adequately plead deliberate indifference to justify relief under § 1983. (*Id.*).

III. **Legal Standard & Analysis**

    A.   Affidavit of Merit Issue

Defendant asserts that this action must be dismissed because Plaintiff failed to timely serve an Affidavit of Merit, as required by N.J.S.A. 2A:53A-29 ("If the plaintiff fails to

5

provide an affidavit or a statement in lieu thereof, pursuant to section 2 or 3 of this act, it shall be deemed a failure to state a cause of action."). Specifically, this statute provides:

> In any action for damages for personal injuries, wrongful death or property damage resulting from an alleged act of malpractice or negligence by a licensed person in his profession or occupation, the plaintiff shall, within 60 days following the date of filing of the answer to the complaint by the defendant, provide each defendant with an affidavit of an appropriate licensed person that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the treatment, practice or work that is the subject of the complaint, fell outside acceptable professional or occupational standards or treatment practices. The court may grant no more than one additional period, not to exceed 60 days, to file the affidavit pursuant to this section, upon a finding of good cause.
>
> In the case of an action for medical malpractice, the person executing the affidavit shall meet the requirements of a person who provides expert testimony or executes an affidavit as set forth in section 7 of P.L.2004, c. 17 (C.2A:53A-41). In all other cases, the person executing the affidavit shall be licensed in this or any other state; have particular expertise in the general area or specialty involved in the action, as evidenced by board certification or by devotion of the person's practice substantially to the general area or specialty involved in the action for a period of at least five years. The person shall have no financial interest in the outcome of the case under review, but this prohibition shall not exclude the person from being an expert witness in the case.

N.J.S.A. 2A:53A-27.

The Affidavit of Merit statute requires "plaintiffs to make a threshold showing" of merit, *Vitale v. Carrier Clinic, Incorporated*, 409 F. App'x 532, 533 (3d Cir. 2010) (citation omitted), in order "'to dispose of meritless malpractice claims

6

early in the litigation'" and "'to allow meritorious claims to move forward unhindered.'"  *Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 274 (3d Cir. 2002) (quoting *Burns v. Belafsky*, 166 N.J. 466, 766 A.2d 1095, 1099 (2001)).  *See also Fontanez v. U.S.*, --- F. Supp.2d ----, 2014 WL 2608386, *2 (D.N.J. May 30, 2014).  The affidavit of merit statute also requires that the affidavit be filed within sixty days of the answer, but permits an extension of time "not to exceed [sixty] days" for "good cause[.]"  N.J.S.A. 2A:53A-27.

Failure to file a timely affidavit of merit generally "requires dismissal of the action with prejudice."  *Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. Withum–Smith Brown, P.C.*, 692 F.3d 283, 305 (3d Cir. 2012); *see also* N.J.S.A. 2A:53A-29 (setting forth the consequence for a plaintiff's failure to provide an Affidavit of Merit).[2]

Plaintiff cites *Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2002) as support for his argument that his Affidavit was timely. In *Snyder*, the Court of Appeals for the Third Circuit found that "the [Affidavit of Merit] statute's

---

[2] However, "four limited exceptions[,]" where applicable, excuse a plaintiff's failure to comply with the affidavit of merit statute.  *Nuveen*, 692 F.3d at 305.  The limited exceptions are: "(i) a statutory exception regarding lack of information; (ii) a 'common knowledge' exception; (iii)" an exception predicated upon "substantial compliance with the affidavit-of-merit requirement;" or (iv) "'extraordinary circumstances' that warrant equitable relief."  *Id*. (citations omitted).

7

purpose is best implemented here by establishing as the beginning point of the 120-day limitations period the date on which a defendant files his answer to the **final amended complaint**." *Snyder*, 303 F.3d at 276 (emphasis added). The Court of Appeals noted the possibility of Plaintiffs filing a "series of amended complaints for the sole purpose of garnering additional time for providing an affidavit of merit," but was "confident" that trial courts would not permit those tactics. *Id.* at n.3.

Here, this Court finds that *Snyder* applies, and that Plaintiff's Affidavit of Merit was due 120-days after the Answer to the Amended Complaint. Defendant has not pointed to any "tactics" of delaying the filing of a final complaint for purposes of extending the time to file the Affidavit of Merit.

Furthermore, although this Court finds that the Affidavit was timely filed, this Court notes that Plaintiff is a state prisoner, incarcerated at the time he filed this action. At the time the first Answer was filed, Plaintiff was proceeding *pro se*, which restricted his access to outside medical professionals who could provide a conforming Affidavit of Merit.  Ramirez' inability to represent himself on a potentially worthy and complicated malpractice case was also a factor recognized by this court in deciding to appoint pro bono counsel.  (*See* Order filed June 7, 2013 [Docket Item 14] at 5-7.)  In *Fontanez v.*

*United States*, the Court noted that the plaintiff's "incarceration during the period within which to file a timely affidavit of merit undoubtedly frustrated [his] ability to timely acquire an affidavit of merit." *See* 2014 WL 2608386 at *6 (D.N.J. May 30, 2014). In combination with other unique circumstances, the Court in *Fontanez* found it sufficient to excuse the plaintiff's failure and grant him an additional extension of time. *See id*. The Court further remarked that it was not the intent of the legislature to foster "gamesmanship" and elevate "form over substance," but rather to promote a resolution of potentially meritorious claims on the merits. *See id*. (citations omitted); *see also New Hampshire Ins. Co. v. Diller*, 678 F. Supp.2d 288, 313 n.30 (D.N.J. 2009) (finding dismissal with prejudice to "be unfair and contrary to the purpose of the Affidavit of Merit statute" in light of the defendant's delay in raising the Affidavit of Merit issue; and therefore, dismissing the plaintiff's complaint without prejudice, in order to afford the plaintiff sixty (60) additional days" to serve an affidavit of merit and "to foster resolution on the merits" of the plaintiff's "potentially meritorious claim").

    Thus, this Court finds that Plaintiff's Affidavit of Merit was timely filed, as it was filed within 120 days of the Answer

to the Amended Complaint, and the motion to dismiss must be denied as to this ground.

B.  Constitutional Claims

Defendant argues that Plaintiff has not pled a constitutional violation to warrant relief under 42 U.S.C. § 1983.

A district court conducts a three-part analysis when considering a Rule 12(b)(6) motion. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Finally, a court must next determine whether the "facts alleged in the complaint are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Determining plausibility is a "context-specific task which requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Plausibility, however, "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

acted unlawfully." *Id.* at 678 (internal citation omitted). In the end, facts which only suggest the "mere possibility of misconduct" fail to show that the plaintiff is entitled to relief. *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

Thus, a complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.*

A "district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings" except that a "document integral to or explicitly relied upon in the complaint may be considered...." *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (citations omitted).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected,

11

> any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1255–56 (3d Cir. 1994); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Here, Plaintiff alleges that Dr. Nugent acted with deliberate indifferent to his serious medical needs in violation of the Eighth Amendment, and that Dr. Nugent failed to inform Plaintiff of the consequences of the urological surgery in violation of the Fourteenth Amendment. (See Complt., ¶¶ 21-26.) The Court shall address each in turn.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *See Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976); *Rouse v. Plantier*, 182 F.3d 192 (3d Cir. 1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison

officials that constitutes deliberate indifference to that need. *See Estelle*, 429 U.S. at 106; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the *Estelle* inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The second element of the *Estelle* test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. *See Natale*, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. *See Farmer v. Brennan*, 511 U.S. 825, 837–38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. *See Andrews v. Camden County*, 95 F. Supp.2d 217, 228 (D.N.J. 2000); *Peterson v. Davis*, 551 F. Supp. 137, 145 (D. Md.1982), *aff'd*, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment

13

do not state Eighth Amendment claims." *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. *See Estelle*, 429 U.S. at 105-06; *White*, 897 F.3d at 110.

The Court of Appeals for the Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. *See Rouse*, 182 F.3d at 197. The Court of Appeals also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. *See Atkinson*, 316 F.3d at 266; *see also Monmouth County Correctional Institutional Inmates*, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs

14

or deny access to a physician capable of evaluating the need for such treatment"); *Durmer v. O'Carroll*, 991 F.2d 64 (3d Cir. 1993); *White v. Napoleon*, 897 F.2d 103 (3d Cir. 1990).

Here, assuming Plaintiff's injury satisfies the objective prong in showing a serious medical need, Plaintiff's allegations do not satisfy the subjective element of deliberate indifference necessary to support an Eighth Amendment claim. He admits that he received treatment, although he is dissatisfied with the treatment provided by Defendant. Even if the facts as presented could constitute a claim of medical malpractice or medical negligence, such claims are not actionable under the Eighth Amendment in a § 1983 action. *See Estelle*, 429 U.S. at 105-06; *White*, 897 F.3d at 110.[3]  At most, Plaintiff alleges that the two urological surgeries performed by Dr. Nugent were negligent, lacking adequate disclosure of the risks of such surgery.  There is no allegation that the defendants intended to inflict harm, nor that they entrusted Plaintiff to a known incompetent surgeon, nor that the medical procedures were themselves likely to cause sterilization.  Instead, what is alleged is that the doctor did not fully inform plaintiff of the risks and benefits

---

[3]     The Court notes that in Defendant's Reply to Opposition, Defendant's counsel cite to documents not in the record, including medical record entries (Docket Item 36, pp. 3-4). This Court did not take these arguments into account in rendering this decision on the Motion to Dismiss.

15

of the surgical procedures, which is negligence, even if the consequences of the negligence, as here, are especially unfortunate. Plaintiff's argument that the Eighth Amendment claims should not be dismissed while this case is "still in its infancy" must be denied, as Plaintiff has not pled the grounds of a constitutional violation. Plaintiff's Eighth Amendment claim under Section 1983 will therefore be dismissed.[4]

The Due Process clause of the Fourteenth Amendment, however, substantively protects certain fundamental rights, including "the right to be free from unjustified intrusions into the body, the [] right to refuse unwanted medical treatment," and the related "right to sufficient information to intelligently exercise those rights." *White*, 897 F.2d at 111-12 (internal citations omitted). The Court of Appeals has,

---

[4] Count Three of Plaintiff's Complaint alleges that Dr. Nugent's "substandard medical care" violated the New Jersey Constitution's proscription against "cruel and unusual punishment," set forth in Article I, Section 12. (Complt., ¶¶ 27-29.) Though a claim of deliberate indifference is cognizable under such provision, it is "analyzed identically to a deliberate indifference claim under the Eighth Amendment." *Davis v. N.J. Dep't of Corrs.*, No. 10-6439, 2011 WL 5526081, at *4 (D.N.J. Nov. 14, 2011) (citations omitted); *Szemple v. Corr. Med. Servs., Inc.*, No. 07-4809, 2012 WL 161798, at *8 (D.N.J. Jan. 19, 2012) (citations omitted) (noting that courts have "'repeatedly construed'" Article I, Section 12 of the New Jersey Constitution "'in terms nearly identical to its federal counterpart'") (citations omitted). Plaintiff's claim under the New Jersey Constitution therefore fails for the same reasons as his Eighth Amendment claim.

accordingly, expressly recognized that convicted prisons "retain a limited right to refuse treatment and a related right to be informed of the proposed treatment and viable alternatives." *Id.* at 113. Indeed, "[i]nformed consent is a necessary precursor to a patient's Constitutional right to refuse treatment since a prisoner's right to refuse treatment is useless without knowledge of the proposed treatment." *Id.* Medical staff therefore "'must provide a prisoner with such information as a reasonable patient would find necessary to making an informed decision regarding treatment options.'" *Dykeman v. Ahsan*, 560 F. App'x 129, 132 (3d Cir. 2014) (noting that *White* recognized a Fourteenth Amendment claim based upon a medical provider's failure to properly inform).

Here, as stated above, Count Two of Plaintiff's Amended Complaint generally alleges that Dr. Nugent convinced him to have "an unnecessary surgery" by failing to properly inform him of the potential consequences involved in the operation. (*See* Complt., ¶¶ 24-26.) Indeed, Plaintiff specifically alleges that Dr. Nugent failed to him inform him of any of "the consequences of the surgery," much less its potential impact on his ability to procreate. (*Id.*) Under *White v. Napoleon*, *supra*, these allegations state a cognizable Fourteenth Amendment claim under Section 1983. Defendant's motion will, accordingly, be denied to the extent it seeks dismissal of Plaintiff's Fourteenth

17

Amendment Claim, Count Two of the Amended Complaint.

   C.   Dismissal Without Prejudice

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant leave to amend the complaint unless amendment would be futile. *See Grayson v. Mayview State Hosp.,* 293 F.3d 03, 114 (3d Cir. 2002). Because it is possible that Plaintiff may be able to amend the Amended Complaint with regard to his Eighth Amendment claim under Section 1983 and his related New Jersey Constitutional claim with facts sufficient to overcome the deficiencies noted above, the dismissal of these claims in the Amended Complaint will be without prejudice.  Any motion to amend the Eighth Amendment claim under Section 1983 and/or the New Jersey Constitutional claim must be filed within ninety (90) days.

**IV. Conclusion**

For the reasons set forth above, Defendant's Motion to Dismiss is denied in part with respect to the medical malpractice claim and Fourteenth Amendment claim of denial of the right of medical information necessary for informed consent, and granted in part with respect to the Eighth Amendment and New Jersey Constitutional claims for deliberate indifference to a serious medical condition.  Plaintiff may file a motion for leave to file a Second Amended Complaint to address the

18

deficiencies of the Amendment Complaint with respect to the claims dismissed herein, within ninety (90) days hereof.

An Order consistent with this Opinion will be entered.

                                          **s/Jerome B. Simandle**
                                          JEROME B. SIMANDLE, Chief Judge
                                          United States District Court

Dated: December 30, 2014